Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Good morning. Thank you both for joining us via video this morning. We really appreciate that. Our first case is Wetherbe v. Texas Tech University System. Ms. Thompson. Thank you, Chief Judge. May it please the court, Natalie Thompson for the appellants. Dr. Nail and Dr. Williams invoke qualified immunity and sovereign immunity respectively as a defense to this First Amendment retaliation claim. A public official suit in his individual capacity loses his qualified immunity defense only if it is beyond debate that his conduct violated the plaintiff's constitutional rights. That requires clearly established law and clearly established law looks to the particular conduct of the defendant in the particular circumstances he encountered. Wetherbe's claims cannot survive that requirement of qualified immunity. Sovereign immunity bars Wetherbe's claims against Dean Williams because Wetherbe cannot invoke the prospective relief. That's because he agrees in his pleadings that Dean Williams has not retaliated against him and that he suffered no retaliation for five years. That means there's no ongoing constitutional violation and so ex parte young is not implicated. As to qualified immunity, earlier in this case, the court concluded that Wetherbe's clearly established in 2013 when Nail acted. When the court reached this conclusion, it conducted the fact intensive balancing test from Connick v. Myers and its progeny, other cases in the Pickering line of cases. That test balances the content, context and form of the speech. Once it has balanced all of these things, the test looks to whether the First Amendment is invoked at all. Now the court balanced these factors and concluded that Wetherbe's articles predominantly address tenure as an institution as opposed to his personal complaints about his job experience or even his personal complaints about his employer, Texas Tech. But that was not a foregone conclusion in 2013. At the time he acted, no clearly established law showed that. It was sufficient to resolve all claims against Nail. If the court agrees, the court would not have to reach any analysis of whether Wetherbe suffered an adverse employment action or plausibly alleged animus. That's enough. Because there's no clearly established law, the case can end and Wetherbe's complaint must be dismissed. Now I'll note on this point that the district court had conducted that same context specific analysis under content, context and form. And it had come out differently. The district court said Wetherbe's speech was not protected. When we have a federal district judge coming out the other way, particularly in a balancing test, which is very fact intensive, the court should think long and hard before holding a public official liable for damages because he made the same mistake that the district judge did. When judges disagree, public officials should not be held liable. I will turn to the adverse employment actions that Wetherbe alleges. District Court credited four of Wetherbe's myriad complaints. None of those four is actionable. And none of the other ones are either. The first one. Now let me ask you that because so I understand your point about not clearly established and that ends the matter. But let's assume our agenda we get past that and we get to the question of whether it did impact his employment in a way that allows for relief. What about this notion that taking him from teaching a graduate course to an undergraduate lowered his pay? Because that would clearly be an adverse employment action. Your Honor, there certainly is a line of cases talking about how a decrease in compensation can be an adverse employment action. And we'll certainly accept for the sake of argument that Wetherbe has plausibly alleged that here. However, there's also a long line of cases, including this court's 1991 decision in Dorset that says teaching assignments and teaching schedules are not actionable. So as a public official trying to figure out the law in 2013, as we'll hypothetically assume public officials do, the defendant would have to balance these two lines of cases, analyze their progeny, analyze the principles behind them, and try to come up his own legal judgment as to whether the compensation issue or the teaching assignments line of cases applies. And when an official has to do that, there's no clearly established law. I'll also note on the matter of this allegation that Wetherbe alleges in the passive voice that this teaching schedule change resulted in, that's a quote, a decrease in his compensation. Now, 1993 liability requires intentional conduct and qualified immunity analyzes the facts as they were known to the defendant. So Wetherbe needs to allege that Nail at the very least knew that this result would occur. There's no allegation of that in the complaint, and there's no plausible indication in the pleading. I'm just asking factually, is it true that you get paid more to teach a graduate class than to teach an undergraduate class at Texas Tech? I do not know, Your Honor. That's not- That's weird that you wouldn't know that, because that would seem to be relevant, because it would seem like Dr. Nail would know that. I mean, in other words, in the school, everybody kind of knows. You may not know exactly what Professor X is getting paid, but if there's a general principle that graduate classes get paid more to the professors than everyone else, I would think everyone would know that. That's the kind of thing you would know. And if that's not true, then why are we here? I mean, I was on the panel six years ago hearing this case, and here we are, and I'm just wondering why we're still here. Indeed. I'll maybe fix this, whatever this is. Same question, Your Honor. I don't know, because it isn't in the record. Now, I could do some independent investigation of how it works at Texas Tech in order to find out, but that still would- even if I did know the answer, that wouldn't be a basis for the court to rule, because it's not in the pleadings, and it's not in the record. So, it's not in the record that there's some general- everybody sitting around the coffee table knows that, man, if you're teaching a graduate class, you get paid more. I understand you might like teaching a graduate class better. That's a different question. I'm a daughter of a teacher. I get how this works. But the dollars, I don't even know. I mean, he was a professor my whole childhood. I don't even know if he got more- paid more to pay- teach graduate classes than undergraduate. I just know he liked them better. Right. So, this is a 12C. We're not at summary judgment yet, so the defendants haven't gotten to put in any facts. So, we accept, for purposes of this appeal, that the change resulted in a decrease in Nail's compensation. That- but that's all that the- at least as I read them, perhaps Mr. Butch- But you're saying we can't infer from that that Nail would know that. I don't believe so, Your Honor. We can- we can only draw inferences from the pleadings that are plausibly supported by facts, and there are no underlying facts explaining this in this record. There's no indication how- what- it's passive voice. We don't even- we don't know what the result- was the result of. We don't know what caused it, and so on. But, in any event, even if Nail did know, there was no clearly established law that would have put him on fair notice that the compensation reduction cases, rather than the administrative duties and teaching assignments, control. I'll just turn, if there are no further questions on that, to a couple of the other adverse employment actions alleged. Two of Weatherby's have to do with research funding. He says it was an adverse employment action when Nail returned a Best Buy grant for research, and that Nail refused to renew his term in a chaired professorship. Now, of course, we accept for pleading purposes that he lost access to these research funds, but the court has said time and time again that these are the kind of administrative matters that are not constitutional injuries, and that will not be heard in federal court. Indeed, in the Aller case, Aller v. Russell, the court said that this exact situation with endowed chair expiring is not actionable. So, we would contend that that means no constitutional violation, and even if so, no clearly established law. So, that theory cannot survive. The fourth adverse employment action that the district court credited was to say that Weatherby was, quote, demoted to a professor of practice. Now, in this circumstance, given the disputed facts, demoted is a legal conclusion not entitled to the presumption of truth. So, we look to the well-pleaded facts, and teaching assignments, again, are not actionable. This court has said that in Dorset, in Harrington, and a number of other cases, and the court said in Benningfield that assigning an employee an unusually heavy workload is also not an adverse employment action under 1983. Dupree v. Saunders, I was on that panel, too. Not that that matters. I lost a lot, whether I was on it or not. Yes, there are quite a number of cases recognizing this. So, moreover, if you look at the attachments. Tell me about the Dupree case. How does that influence this whole notion of what was clearly established and what wasn't? So, Your Honor, in the Dupree case, the court recognized, particularly for First Amendment retaliation, how very difficult it is to say ex ante that someone's conduct violated the Constitution. And that makes sense. The First Amendment test is, it involves a number of multi-factor balancing tests. It's very fact-intensive. And so, it's quite difficult for the court to say, yes, this violates clearly established law. So, qualified immunity is difficult to overcome, as the court explains in the Dupree case. I'll just note one more thing about the professor of practice allegation. If the court looks to the attachments to the pleadings, there is, it's evident that a different university official imposed this rule, and it was based on a generally applicable policy. Everyone but tenured and tenure-track professors teaches three classes. Weatherby is not tenured. So, the retaliatory animus element is also missing there. As to all of the other complaints that Weatherby has about his treatment by now. Well, and the not tenured is by his choice. Correct. That's the whole core here. He doesn't like tenure. Correct. Exactly. By his choice, he's not tenured. So, and all of these other allegations, all of them are foreclosed by two cases can resolve them all. Although, there are many other sites, Benningfield and Dorset. Benningfield from 1998 says that false accusations and complaints about travel reimbursements are not actionable under 1983. And Dorset says that administrative duties like the committee membership and serving as an advisor to a student club, these are administrative matters that a federal court is not going to adjudicate. I'll just turn with my last couple of minutes and opening to address Dean Williams' sovereign immunity. This is an ex parte young claim, but Weatherby agrees that Williams has never retaliated against him. And it's been five years since the last retaliation. So, ex parte young is unavailable. Moreover, and actually coming before that, since it's jurisdictional problems, Weatherby agrees that the claim against Williams is moot. Now he says that the capable repetition debating review exception applies. But we've, as we've explained in our brief, that's a rare exception to mootness and it's not implicated here. That's in our reply at 15 through 17. Any potential retaliation by Williams against Weatherby is entirely speculative. If the court has no further questions, I'll yield my time. Thank you. We appreciate it. Mr. Bustos? Yes, may it please the court. This First Amendment case shows why qualified immunity should be denied to Lance Nail and why tenure in academia is so wrong. Former Dean Lance Nail, the very person who retaliated against Weatherby for his speech on tenure, was later fired from his job as Dean of Texas Tech's Business School for grade tampering and for not protecting females as directed by Title 7 or Title 9. Yet, thanks to tenure, even after being fired as Dean, he was allowed to remain as a professor engaging in... But that's not in question. We're not here to debate the benefits and lack of benefits of tenure, are we? Except the extent that it's the basis of Weatherby's protected speech. Well, the protected speech can include, and frankly does include, things people say that no one likes or agrees with. It includes very horrible speech. So that's not the question of whether we agree with Professor Weatherby. The question is whether qualified immunity protects Dean Nail or former Dean Nail. Even if Dean Nail is a bad guy, that also doesn't matter. So why don't you respond to the Dupree issue? Why doesn't the Dupree case at least put into question how Nail could have known that what he did was wrong in violation of the Constitution? Dupree is distinguishable because in that case, the plaintiff did not suffer a loss of compensation. Here, Weatherby did suffer a lot of loss in compensation because of Nail's actions. That's why Dupree is completely distinguishable from this case. But I mean, the core of Dupree, he was kept out of the building. He was deprived of all of his classes, kept out of the building. It was pretty extreme how he was treated. And I guess what I'm saying is, we have these cases about we the courts don't get in the middle of teaching assignments. We have Dupree. How doesn't that — I mean, tell me where that would put you in the mindset if you were carefully reading all these cases as Dean Nail at the time. How would you know that what you were doing was a constitutional violation? By giving him a pay cut. And a pay cut has repeatedly been held by this court to be a hallmark of an adverse employment action. There's a multitude of cases from this court holding that a loss of compensation and employment benefits is the very definition of an adverse employment action. You can look to the McCoy v. City of Shreveport case, the Monmouth v. City of Corpus Christi case, and the Click v. Copeland case. All these cases from 2007, 2004, 1992, all hold that a reduction in compensation pay cut is a hallmark of adverse employment action. And remind me, which one of these involve teachers or professors? Because, I mean, of course I'm aware of the, you know, losing money at employment concept, but tell me how that fits with this whole teaching we don't get in the middle of assignments point. Well, I'll just go back to the — this court has applied that pay cut test to a multitude of fact patterns — to policemen, to city employees. So this has been applied across the board to government workers. And so, Weatherby received damages in excess of half a million dollars as a result of Nail's actions. And that has been a hallmark of an adverse employment action over the years. To answer your question — Can I — can you just — I understand that, and I respect that argument very much — but can you just tell me the cases that involved teachers and violations of First Amendment and reduction in pay? Can you focus me on that? I don't have a particular teacher case in front of me except for Cutler v. Stephen F. Austin University. Cutler v. Stephen F. Austin University. And that is a 2014 case, and that case relied on pre-2010 cases that said a reasonable official should have known that external speech made as a citizen by a university art gallery director was protected speech. And so, that case relied on pre-2010 cases for that proposition. So this very court put Lance Nail on notice that that type of retaliation for external speech is protected. And the appellant is trying to ask this court to basically engage in a new test and create a new test. If you look at all the First Amendment retaliation cases, this court has gone back and retaliated against public employees for their speech that's protected in the First Amendment. And if you look as early as 2006, years and years before this fact pattern, the Supreme Court held in Garcetti that if a public employee is speaking out on a matter of public concern and not just their own job, then they cannot be retaliated against under their First Amendment. So that that a pay cut would result? It does, and he did know a pay cut result. He approves all salaries. Dr. Weatherby, in his pleadings, averred that he had to give annual review reports to the dean, submit to the office of the dean, telling him what he was doing, what type of publications he was authoring, including his publications on tenure. We have an allegation in our pleadings that Dean Nail knew about this speech and that he was responsible for the pay cuts. And so there that is actionable right there in itself. Can you point me to where in the record? I want to focus on that allocation. It's in your complaint is what you're saying. Yes, it's in the complaint. And I can give you some record sites as to Dean Nail's knowledge. Okay, you allege that? Yes, yes, Your Honor. Yes, I'll give you a record site of 2001 and then also the following record sites. 1731 to 1732. 1747. 1752 to 53. 1766. And again, 2001. Okay, going back to the Dean Williams ex parte young issue. In fact, in our brief, we note that Dean Williams recently and temporarily stripped Dr. Weatherby of his right to vote on faculty advancement issues. Again, Dr. Weatherby was hired as a full professor by Texas Tech University. He was offered tenure by the university. And after being offered tenure, he respectfully declined it and received an appointment as a full professor, not an adjunct professor, but a full professor. And he had a full professor teaching load. And as Judge Haynes mentioned, her father enjoyed teaching graduate students more. So did Dr. Weatherby. And this court has held that transfers like Dr. Weatherby's demotion can constitute adverse employment actions if they are punitive or if the job is markedly less prestigious and interesting than the old one. Also, to answer another question from Judge Haynes, Dr. Weatherby was removed from teaching the MBA course. That was an additional course that he had that paid him additional money. He lost 20% of his pay because he was stripped from teaching that class. And so it's two there. It's two points why it's actionable. One, because it's an adverse employment action because of the pay cut. And two, when you go from teaching all graduate student courses that we have pled to being stripped now to teaching only courses that graduate students themselves teach each other, that makes the job markedly less prestigious and less interesting than the old one. And so again, that is an adverse employment action. What does that square with all of our case law about we don't get in the middle of these teaching assignments? You know, I would say that this court may have to go ahead and make a decision to apply. Are we going to apply Thompson v. City of Waco? Are we going to apply Breaux? Are we going to apply Click v. Copeland? And hold that if you have such drastic changes in job conditions, that it'll be actionable. But you don't even have to go there, Judge Haynes. All you have to do is rely upon other well-established holdings from this court to say that if you drastically cut someone's pay in retaliation for their First Amendment speech, then that's actionable. And that's certainly what's happened here. And the court can safely and firmly rely upon the drastic pay cuts that occurred here at the hands of Dean. Well, let me ask you, I understand the graduate to undergraduate pay cut, but the issue of the endowment and the issue of this Best Buy grant. Explain to me how that, based on the pleadings, demonstrates that he lost money. Not that he lost, obviously, I'm sure you'd like to get, I know professors are always trying to get grants, I get that. But where is it that he gets money from the grants in his pocket, as opposed to being able to do more research or whatever? The grant is summer support for his grant as a summer supplement for his salary. We've pled that, we've briefed that. Texas Tech seemed to try to disagree with that, but they can't make that argument at this stage. The court has to accept Dr. Weatherby's pleadings as true. And so that cost him money when that Best Buy grant was yanked by Dean Nail. And then in terms of the chair professorship, that makes this case distinguishable, because in that case, endowed professorships were not routinely renewed at the request of donors. And in this, in Dr. Weatherby's case, the government actor violated its own operating procedures in terminating the endowed professorship. That fact was not in Oler either. So we have, again, capricious punitive actions taken by Dr. Nail that makes that action punitive and actionable and different from the case in Oler. There is no negligent decision that Dr. Weatherby has alleged in terms of changing his schedule. And indeed, Judge Haynes, you're right. Texas Tech does need to fix this. This is horrible. Well, I think both sides do, to be honest, but we'll decide this case based on its merits or thereof. But it just struck me as, I mean, six years ago, I was on a case involving a different, but I mean, Texas Tech defendant and Weatherby plaintiff. And even as a state court trial judge, I had maybe one or two cases that lasted six years. So that's a long time. These are two cases, actually, Judge. I know that. I'm well aware of that. But it is still about roughly the same thing. Weatherby is still suing people from Texas Tech over roughly the same thing. Speech about tenure. I know the facts are different and I know that this is the second appeal in the second case, but nonetheless, it just strikes me as someone somewhere needs to work through this. But again, I'm not going to get in the middle of that. We'll argue that it's Dean Nail who should not have retaliated against Dr. Weatherby. The record is clear. He told Dr. Weatherby in their last face-to-face meeting, I don't want to be in the Wall Street Journal anymore. I don't like these Wall Street Journal articles. And so that's clear evidence that Lance Nail was taking. Actually, isn't that a little bit different? I mean, if I'm sending an email to Chief Judge Owen and Judge Dennis, and I know that they're going to send it to the Wall Street Journal, I might decide, even if I wasn't going to write anything particularly good or bad, I just don't want to be in the Wall Street Journal. So I'm not going to send them the email. I don't know why that is repulsive. That's my own right that I don't want to be in the paper. It isn't rebelling against anybody. If you know your friends are putting what you write them in the paper, it alters how you feel about your friends and how you feel about what you write. But that's not all he said, Judge Haynes. He also said that he was taking action against Weatherby because he was, quote, going to the media especially and attacking the college. And again, it's a fact question here. Dr. Weatherby was not attacking the college when he was going to the media. He was talking about tenure. He also used this excuse that Dr. Weatherby had given more money in donations to the Rawls College of Business than any other faculty member. And so the excuses that Dean Nail used to justify his retaliation against Dr. Weatherby were just mere pretexts for discrimination. So the record is clear of multiple instances where Dean Nail used pretextual excuses to justify his retaliation. Again, I just want to point out that this court has never said in any of its holdings under First Amendment retaliation cases that, well, we have to look at this very specific fact pattern and only if this person has spoken under this specific fact pattern will we find that a person can't have qualified immunity. The law was laid down in 2006 by the U.S. Supreme Court in Garcetti versus Ceballos. And the court merely held if an employee is making speech unrelated to their job duties, they're going to be protected. That is the test. That's the test that's been established since 2006. And this court has also said that as early as 2009, that type of protection was in place as well under the Haverda versus Hayes City case, for example, and the Salds versus Edna Independent School District. The U.S. Supreme Court has said that educators, here's a quote from the Pickering case where the court held, quote, teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the school should be spent. Accordingly, it is essential that they be able to speak freely on such questions without fear of retaliatory dismissal. Close quote. That's clearly established law back in 1968 before Dean Nail even went to college. And so the law was clearly established as early as Pickering that educators should be free to be able to speak out on matters of public concern without fear of retaliation. Judge Dennis, in your Cox versus Kaling case, you said that, quote, the law was established clearly enough in this circuit as far back as January 1988 that a reasonable officer should have known that if he escaped, that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him. So that was clearly established law that you can't try to immunize yourself from liability by demoting someone and transferring them rather than outright firing them. And so Dean Nail was doing what a lot of administrators do. They try to push people out by making their terms of employment so miserable that they gave up and quit. Dr. Weatherby was too devoted to his students and the work that he was doing to do that. Again, another judge Dennis opinion from back in 2004. He said, quote, in the Marcos versus City of Atlanta, Texas case, quote, In this case, we have a public employee speaking out about alleged corruption in a police department, a subject undoubtedly of public concern, close quote. Here, Dr. Weatherby was speaking out about corruption in higher education, about how tenure as an institution is corrupting higher education. It's speech about public corruption. It's therefore undoubtedly as much a matter of public concern as police corruption is, as it was in the Marcos versus City of Atlanta, Texas case. And it's notable that Nail and the appellants do not cite a single First Amendment case holding that qualified immunity applies because the topic or subject matter of protected speech had not previously been deemed as speech on a matter of public concern. That's because that is not the test. The test is whether Nail violated Weatherby's statutory constitutional rights and whether Weatherby's constitutional right to be free from territory misconduct was truly established. As I've mentioned, this U.S. Supreme Court in Pickering in Garcetti and this court as back in 1988 have all held that this type of speech has to be protected from retaliation. For these reasons, Dr. Weatherby respects requests of this court affirmed the district court order denying qualified immunity. Thank you. Thank you, Miss Thompson. Nails knowledge of the alleged pay decrease. I did a quick flip through of the record size that Mr. Bruce just provided. I don't see anything in there that could support Nail knowing about pay decreases. It certainly supports Nail knowing about some of Weatherby's articles and Nail knowing about some other facts, but nothing more than the dean not know. Your Honor, there's nothing in the record to support that. Now, here at argument that Dean Nail had to approve various things. That may be true, but it's not in the pleadings. And even if we accepted it's true, that's there's nothing specific about this resulted in a decrease in compensation. But in any event, even if we do credit that, there's no clearly established loss showing a violation. How do you respond to his argument that you don't need a sort of case on point like you do in excessive force context in order to rebut qualified immunity? That's not correct, Your Honor. There does need to be now. Certainly, I will clarify. We are not arguing that there has to be a case on speech about ten years specifically as the topic. But there does have to be a case with enough specificity that a defendant considering his particular conduct would know that it violated the law. It's got to be beyond debate, and we don't have that here for all of the various reasons we've discussed. Even if we credit that Nail would have known about the pay decrease, there's no clearly established law showing him whether decreases in compensation control or teaching assignments control because of these two competing lines of cases. Now I'm like like my friend. I'm unaware of any case that has said that a professor needs to follow or a teacher of any sort needs to follow the decrease in comp cases rather than the teaching assignments cases. What's your response to the Stephen F. Austin case? The Stephen F. Austin case? Yes. No, just reminding myself which one that is. That is a case about whether the art gallery director was being asked to speak in his or not to speak being asked to judge a an art show in his official capacity as a university official or if it was in his personal capacity. The court ultimately concluded that based on the allegations then that they then had to accept it was in his personal capacity and he was writing a Nothing about that would show Dean Nail what's going on here. The letter was not at all like the media articles we're dealing with here which talk about both tenure as an institution and whether these personal experiences. It was a letter saying I'm not doing your art show because I don't want to be associated with you to a state representative. So certainly that case stands for the general proposition that First Amendment retaliation based on speech as a citizen on a matter of public concern is unlawful but that's setting the level of generality far too high. What about the specific case here and I believe Judge Dennis was on that panel the first appeal in this case so the second of the three appeals that deal with whether being somebody from Texas but the one 699 F appendix 297. I mean if y'all had such an easy QI case why did that case get remanded? Your honor the court did not address the second question in QI. It didn't talk about clearly established law at all. That makes sense because the district court there had ruled that whether we speech was not protected and dismissed the case on that ground alone. So the district court hadn't reached the second question and the court didn't either. That the court did not purport to say that there's clearly established law requiring. No I know I mean I've read the case but I'm just wondering because you can affirm on any ground of course you know presented in the district court blah blah blah why are kind of why are we still here question if you if the qualified immunity defense is so easy. Your honor the defendants raised the qualified immunity issue in that case as well and the court decided not to reach it. I can't say why but what they did decide is not something that established the law. I see that my time has expired. Uh appellants would ask the court to reverse. Thank you appreciate your arguments and your case is under submission.